IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HARDIE'S FRUIT & VEGETABLE CO., LP, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:18-CV-1454-D |
| VS. | § § | |
| BIMC, LP d/b/a/ BIG BEAT DALLAS, et al., | § § § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Hardie's Fruit & Vegetable Co., LP ("Hardie's") applies for a preliminary

injunction to prohibit defendants BIMC, LP d/b/a Big Beat Dallas ("Big Beat"), BIMC

Operating Co., LLC ("BIMC Operating"), and Billy Bob Barnett ("Barnett") (collectively,

"defendants") from dissipating funds subject to a statutory trust under the Perishable

Agricultural Commodities Act ("PACA"). For the reasons that follow, the court grants in

part and denies in part the motion of Hardie's for a preliminary injunction, grants the motion

of Hardie's to modify relief, and enters today a preliminary injunction in favor of Hardie's.

I

Hardie's is a produce wholesale purchaser and supplier, and Big Beat Dallas is

engaged in the same business. BIMC Operating is the general partner of Big Beat Dallas.

Barnett is the director, member, and manager of BIMC Operating and the limited partner of

Big Beat Dallas. From January 12, 2018 to May 29, 2018 Hardie's sold and delivered

$46,110.20 in wholesale produce to Big Beat Dallas.  Despite multiple demands from Hardie's, neither Big Beat Dallas nor any other defendant has paid this outstanding debt.

Big Beat Dallas unexpectedly ceased operations on or about May 30.  Hardie's filed this suit on June 6, alleging that the unpaid funds were subject to a statutory trust under PACA, and, *inter alia*, that defendants failed to make prompt payment in accordance with the statute.  Hardie's moved the same day for entry of a preliminary injunction and *ex parte* temporary restraining order to restrain defendants from dissipating any of Big Beat Dallas' assets, and to order defendants to file an accounting of the assets and liabilities of Big Beat Dallas.  The court entered the temporary restraining order ("TRO") on June 7.

Hardie's served the TRO, complaint, summons, and pleadings on defendants through Federal Express on June 8.  It also served Big Beat Dallas' financial institutions, and Branch Banking & Trust Co. ("BB&T") has confirmed that the principal owed under PACA is being held in Big Beat Dallas' account.  Hardie's also personally served Big Beat Dallas and BIMC Operating.  It continues to attempt personal service on Barnett.

Hardie's moved to extend the TRO on June 18.  Finding that defendants had failed to respond to the TRO, produce the required financial documentation, or turnover the disputed PACA funds, the court granted the extension on June 21, extending the TRO through July 5, 2018 at 10:48 a.m.

On July 2 Hardie's moved to modify the relief requested in its motion for a preliminary injunction.  According to the motion, Hardie's discovered that it had

inadvertently failed to serve defendants with its brief and appendix in support of its preliminary injunction motion. Although Hardie's maintains that defendants have been on notice of the pending injunctive relief for over one month, it proposes that the court narrow the scope of the preliminary injunction relief granted to Hardie's by requiring that "the funds on deposit continue to be held by BB&T, rather than turned over to Plaintiff's counsel, and that Defendants be given a deadline to show cause why the injunctive relief should be dissolved." P. Mot. to Modify 4. Alternatively, Hardie's proposes to extend the TRO. Defendants have not responded to any of the pleadings or motions that Hardie's has filed.

II

To obtain a preliminary injunction, the party seeking relief must establish the following: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to it outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *See, e.g., Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision). Although the decision to grant a preliminary injunction is within the court's discretion, it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden of persuasion on all four elements. *See Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th

Cir. 1985).

III

The court considers first whether Hardie's has established a substantial likelihood that it will prevail on the merits of its claim.

A

The Fifth Circuit recognizes that "PACA is a tough law." *Golman-Hayden Co. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 351 (5th Cir. 2000) (internal quotation marks and citations omitted). It regulates the produce industry and seeks to promote fair dealings in transactions of fruits and vegetables. *Id.* at 350.

Under PACA, "when a seller, dealer, or supplier ships produce to a buyer, a statutory trust is created upon acceptance of the commodities." *Id.*; *see also* 7 U.S.C. § 499e. The relevant text states that "all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities" until the buyer makes the required payment. 7 U.S.C. § 499e(c)(2). The trust preserves the seller's rights, and the seller "obtains a priority interest in the trust assets held by the [buyer]." *Golman-Hayden*, 217 F.3d at 350. A seller, however, loses the benefit of the trust unless it has served written notice on the buyer of the seller's intent to preserve the trust benefits. PACA provides that a seller "may use ordinary and usual billing or invoice statements to provide notice of the

- 4 -

[seller's] intent to preserve the trust." 7 U.S.C. § 499e(c)(4).

The trust commences by operation of law and continues until the buyer makes full payment for the delivered produce. *See* 7 C.F.R. § 46.46(d)(1). The buyer, as trustee, has a fiduciary duty under law to maintain the trust assets at sufficient levels to ensure full payment to sellers, who are the trust beneficiaries. *See* 7 U.S.C. § 499b(4). Nevertheless, to minimize the burden on buyers, the statute permits the trust "to exist as a nonsegregated floating trust" and permits the commingling of assets. *See Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 156, 159 (11th Cir. 1990). But when trust assets are commingled with other funds, the trust is impressed upon the entire commingled fund for the benefit of the unpaid beneficiaries. *See Sanzone-Palmisano v. M. Seaman Enters.*, 986 F.2d 1010, 1013-14 (6th Cir. 1993); 7 C.F.R. § 46.46(d)(1). The burden is on the buyer "of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets." *Id.*

Under PACA, the "district courts . . . are vested with jurisdiction specifically to entertain . . . actions by trust beneficiaries to enforce payment from the trust[.]" 7 U.S.C. § 499e(c)(5). Included in this grant of authority is the power of a district court to issue an injunction necessary to preserve the trust assets. *See Frio Ice, S.A.*, 918 F.2d at 159 (stating that "preventing dissipation of the trust is a key purpose of PACA").

B

The court concludes that Hardie's has met its burden of establishing a substantial likelihood of success on the merits. First, Hardie's has presented evidence that it is a licensed seller of produce under PACA and that it sold $46,110.20 worth of produce to Big Beat Dallas. Through language included on relevant invoices, Hardie's preserved its PACA trust rights by notifying defendants of its intent to preserve its trust benefits. Hardie's further provided evidence that Big Beat Dallas accepted delivery of this produce and failed to pay Hardie's for the produce. Defendants have not submitted any briefing or evidence to undermine the submissions of Hardie's.

IV

The court now considers whether Hardie's has established a substantial threat that it will suffer irreparable injury if the injunction is not granted.

Several federal courts have ruled that "[PACA] trust dissipation can satisfy this factor if, absent such relief, ultimate recovery is rendered unlikely." *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 141 (3d Cir. 2000); *see also Eddy Produce LLC v. Sutton Fruit & Vegetable Co.*, 2012 WL 487050, at *3 (N.D. Tex. Feb. 14, 2012) (Godbey, J.). Here, Hardie's has presented evidence that Big Beat Dallas has ceased operations, thereby threatening the dissipation of PACA trust assets. The outstanding balance is being held in Big Beat Dallas' bank account with BB&T, and, if these assets are dissipated, Hardie's will have little chance for recovery. Therefore, the court finds that

Hardie's has established that there is a substantial threat it will suffer irreparable injury if the injunction is not granted.

V

The court next examines whether Hardie's has demonstrated that the threatened injury to it outweighs the threatened harm that the injunction may do to defendants. PACA establishes that " the assets in the trust can only be used to pay sellers for the produce sold." *Sanzone Brokerage, Inc. v. J&M Produce Sales, Inc.*, 547 F.Supp.2d 599, 603 (N.D. Tex. 2008) (Means, J.); *see also Eddy Produce*, 2012 WL 487050, at *3 (quoting 7 C.F.R. § 46.46(d)(1)) (stating that "PACA's implementing regulations place an affirmative duty on dealers . . . 'to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities.'"). Therefore, defendants are legally barred from using any PACA trust funds for other purposes. In this way, Congress has already contemplated potential harms to defendants in these cases. *See Sanzone Brokerage*, 547 F.Supp.2d at 603. Furthermore, the more delay in issuing the injunction, the greater the risk that Hardie's never receives payment. For these reasons, the court finds that the balance of harms favors granting the injunction.

VI

The court now examines whether granting the preliminary injunction will serve the public interest.

"Congress has specifically provided that protecting the interest of produce sellers and

ensuring they are paid for their produce is in the public interest." *Id*. PACA states that

> a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements *are contrary to the public interest*. This section is intended to remedy such a burden on commerce in perishable agricultural commodities and *to protect the public interest*.

7 U.S.C. § 499e(c)(1) (emphasis added). "[Big Beat Dallas'] alleged nonpayment, therefore, is a practice Congress specifically intended to prohibited by enacting PACA." *Eddy Produce*, 2012 WL 487050, at *3. The court thus finds that granting the preliminary injunction will serve the public interest.

## VII

Pursuant to Fed. R. Civ. P. 65(c), the party moving for a preliminary injunction must give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The amount of the security "is a matter for the discretion of the trial court." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)).

The court concludes in its discretion that security (i.e., cash or a bond) in the amount

of $10,000 is necessary to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. If defendants can show that the bond should be increased, they may move separately for that relief. *See, e.g., TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F.Supp.2d 763, 774 (N.D. Tex. 2009) (Fitzwater, C.J.) (holding that defendant could move separately to have bond increased); *Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*, 1988 WL 161314, at *3 (N.D. Tex. Dec. 14, 1988) (Fitzwater, J.) ("Either party may move the court in writing to increase or decrease the bond for good cause shown.").

## VIII

Although defendants were served with the TRO and pleadings in this case on June 8, Hardie's failed to serve defendants with the briefs addressing the preliminary injunction until July 3. Accordingly, the court will alter the scope of the original preliminary injunction request and order that the contested PACA trust funds—in addition to other commingled funds—continue to be held in Big Beat Dallas' BB&T bank account. Defendants will have 5 business days following entry of the preliminary injunction to show cause why the injunctive relief should be dissolved. Hardie's will have 5 business days after defendants file such a motion to respond to it. The court will then decide whether to dissolve the injunctive relief or to direct that the PACA funds be paid to counsel for Hardie's.

\* \* \*

For the reasons explained, the June 6, 2018 motion of Hardie's for a preliminary injunction is granted in part and denied in part, and the motion of Hardie's to modify relief

is granted.  A preliminary injunction is being filed contemporaneously with the filing of this memorandum opinion.

**SO ORDERED**.

July 5, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE